805 So.2d 1141 (2002)
STATE of Louisiana
v.
Allen MAISE (Sentenced as "Alan Maise").
No. 2000-K-1158.
Supreme Court of Louisiana.
January 15, 2002.
Rehearing Denied February 22, 2002.
*1143 Bruce G. Whittaker, Esq., for Applicant. Allen Maise, pro se.
Rebecca J. Becker, Esq., Terry M. Boudreaux, Esq., Richard P. Ieyoub, Atty. Gen., Paul D. Connick, Jr., Dist. Atty., for Respondent.
TRAYLOR, J.[*]
Allen Maise was indicted by a grand jury for the aggravated rape of a juvenile *1144 under the age of 12, a violation of La.Rev. Stat. 14:42. After a jury trial, defendant was found guilty as charged. The trial court sentenced defendant to life imprisonment at hard labor without the benefit of probation, parole, or suspended sentence. The Louisiana Fifth Circuit Court of Appeal affirmed. State v. Maise, 99-734 (La. App. 5th Cir.3/22/00), 759 So.2d 884. We granted the defendant's application to consider whether the court of appeal correctly applied the harmless-error standard of review. State v. Maise, 00-1158 (La.9/14/01), 795 So.2d 1219. After a review of the record, we agree with the court of appeal and affirm defendant's conviction and sentence.

FACTS AND PROCEDURAL HISTORY
On an evening in April 1996, defendant was visiting the home of his aunt, Ethel Sampey, when his six-year-old cousin, C.M., asked him to play a video game with him in his bedroom.[1] According to Ms. Sampey's testimony, the defendant left the living room and entered her grandson's bedroom. Shortly afterwards, Ms. Sampey heard her grandson scream. She went to C.M.'s room, and saw C.M. lying on the foot of the bed. Ms. Sampey testified that defendant was hugging C.M. telling him, "be quiet, everything's going to be okay." Ms. Sampey said that when she entered the room, C.M. was wearing his underwear and a tee shirt.[2] The defendant was wearing shorts and a tee shirt.
Later that evening, after the defendant was sent home, C.M. told his grandmother, "A.J. hurt me real bad."[3] When questioned as to how A.J. hurt him, C.M. responded, "my booty." She said, "How did he hurt your booty?" C.M. told her, "with his privates." Later that evening Ms. Sampey confronted the defendant's stepfather, Frank Polito, who told her that the defendant's mother had been instructed not to leave the defendant with small children.
On April 27, 1998, the defendant's mother telephoned the Crisis Center and spoke with one of the social workers. She informed the social worker that she was concerned that her son had re-offended.
Three days later, on April 30, 1998, during one of defendant's regularly scheduled group therapy sessions, he told the group that he had re-offended by anally penetrating his six-year-old cousin. According to Phillip Hemphill, the social worker, the defendant stated he knew that he penetrated C.M., because he heard him yell and scream. Defendant further stated, according to Hemphill, that he attempted to cover C.M.'s mouth or tell him to quiet down, but then the child's grandmother came in the room. After the group therapy session, Hemphill telephoned the defendant's probation officer and informed her of the need for intervention.
On May 20, 1998, C.M. was interviewed by Amelie Gorgon of the Jefferson Parish Sheriff's office. C.M. recounted the events of the incident to Ms. Gordon. The interview was videotaped and subsequently used at trial.
On June 4, 1998, defendant was charged as an adult by grand jury indictment. He pled not guilty and was subsequently *1145 found competent to stand trial by a sanity commission.
On the morning of trial, at a Prieur and suppression hearing, the state sought to introduce testimony from defendant's social worker, the defendant's statement to his probation officer, and evidence regarding the prior sexual battery adjudication. The trial court denied the motion to exclude the statements and allowed the prior sexual battery adjudication. The court of appeal reversed, finding both the telephone statements and the other crimes evidence inadmissable. State v. Maise, 99-0024 (La.App. 5th Cir.1/7/99). Trial was stayed and the state sought review in this court. This court granted the state's application, vacated the Fifth Circuit's ruling and reinstated those of the trial court. State v. Maise, 99-0051 (La.1/13/99), 735 So.2d 641. The trial commenced on January 5, 1999.
The state's first witness was Dr. Scott Benton, an expert in pediatric forensic medicine. He testified that he performed a sexual abuse examination on C.M. on June 30, 1998 (approximately two months after the incident). His findings revealed no indication of sexual abuse. Dr. Benton told the jury, however, that he would expect the exam to be normal, because the area heals easily.
Dr. Benton testified that during his interview with C.M., C.M. told him, "A.J. [the defendant] would get on top of me while I was watching TV or playing Nintendo.... Sometime he stick his private in my hiney. It made me cry and cry because it hurted." Dr. Benton found C.M.'s statements to be detailed and consistent, with no evidence of fabrication.
Next, River Oaks Psychiatric Hospital social worker, Philip Hemphill, testified that defendant was a referral from juvenile probation. After a defense objection was overruled, the witness testified that defendant was on probation for taking a three year old female into a bedroom, where he "pulled her pants down, pulled his pants down, rubbed his penis on her genital area as well as his hand on her genital area." As to the present offense, Hemphill testified that the defendant admitted, during group therapy, that he had anally penetrated his six-year-old male cousin. According to Hemphill's testimony, the defendant said that he knew he had penetrated the child because the boy yelled and screamed. Hemphill stated that he later contacted the defendant's probation officer and informed her of the incident.
Wanda Brown of the Department of Juvenile Services identified the defendant as her client, on probation for a sexual battery. She told jurors that the defendant was in group therapy for being both a victim and a perpetrator of sexual abuse. Brown testified that the defendant's social worker contacted her and told her that the defendant wished to speak with her. Brown got on the phone with the defendant and asked "if he knew what was going on with him in regards to what was being said." He responded, "Yes." She then asked if he wanted to talk about it and he did. She asked the defendant if he had sex with the little boy. The defendant said, "Yeah." She then asked him what happened. The defendant told her that he undressed the boy, undressed himself, and got on top of the boy. Brown said further:
"I remember asking him did he penetrate him." And his response was ..., "Well, the doctor said I didn't." And I said, "You should know if you did. Did you penetrate him?" And he said, "Yes."
The victim's grandmother told jurors that she and the defendant were watching television when her grandson asked defendant to come to his room to play a *1146 game. Shortly thereafter she heard C.M. scream. Entering the room, she found both the defendant and C.M. on the bed, defendant was telling C.M. that everything would be alright. Later that evening, C.M. told his grandmother that A.J. "Hurt him real bad."
C.M., the victim, testified that he remembered making the videotape on May 20, 1998, approximately three weeks after the incident. The videotape then was played for the jury. On the videotape C.M. told Amelie Gordon that "A.J.," his "big cousin," whom he also identified as "Allen," got on top of him and hurt his "butt" with his "wee-wee." C.M. said, "He came right up to the heart and it hurted bad bad.... It hurted so bad, I cried so loud." After the videotape concluded, C.M. testified that everything he said on the tape was truthful. He identified the defendant in open court and said that the defendant was the one who did "those things to him." On cross-examination he was asked whether the defendant "touched your butt with his wee-wee" and he responded, "Yeah."
When Detective Sergeant Kelly Jones of the Jefferson Parish Sheriffs Office was called to testify, the defense sought a limiting instruction on the other crimes evidence. The trial court denied the request remarking, "[not] right now." Jones testified that she investigated an incident that occurred on September 13, 1996, wherein the defendant sexually abused a three-year-old girl. Jones said that defendant took the child, who was playing with neighborhood children, into a neighbor's home while the neighbor was outside talking to other parents. He took her into a bedroom, removed her clothing, removed part of his clothing, touched her on the vaginal area with his hand, and inserted his penis in her vagina. Jones said the defendant denied penetrating the victim. He subsequently was adjudicated delinquent for sexual battery.
When the defense presented its case, its primary defense was that penetration never occurred. Allen Maise testified on his own behalf. He reiterated his own history, confirming that he was molested by his father from the age of two and by his brother from the age of six until he was twelve. He was afraid to report it to anyone because of threats from his brother. The defendant admitted that he had previously been adjudicated delinquent because of an incident with a little girl. He said that he accepted responsibility for that incident and knew he had a problem. He testified that he attended group therapy with Phillip Hemphill at the New Orleans Adolescent Home and at Family Services of Manhattan with therapist Joan Bell.
The defendant discussed the incident resulting in this case. He said that the night of the incident he was watching television with his aunt and C.M. kept coming in asking him to play a video game, so he left the room to go and help C.M. with the game. The defendant testified that he went into the victim's room and rubbed C.M.'s "private area" with his hand.
The defendant denied undressing the victim or himself. He said that he touched the victim over his clothes. He admitted to touching the victim's anus, but denied touching the anus with his penis. He admitted that the victim cried out, but denied that there was any penetration.
The defendant said that he told Philip Hemphill that he touched the victim with his hand. He admitted that he told Wanda Brown that he penetrated, but he said that he did not know the meaning of "penetration" when he talked to Brown. He denied ever telling anybody he raped or put his penis in the victim. The defendant *1147 again specifically denied the allegations of rape and said that the victim was lying.
Also appearing for the defense were the defendant's mother and stepfather. His mother testified to her son's sexual abuse by his father and brother, that he was on probation for a prior offense, that she begged her sister (the victim's grandmother) to call the police so that her son could get help, and that her son told her that he touched C.M.'s privates. Defendant's stepfather testified that he and C.M.'s grandmother examined the child on the night of the incident but saw no indication of penetration. He stated that he spoke with C.M., but C.M. never claimed penetration.
The jury found the defendant guilty of aggravated rape. Defendant appealed his conviction to the Court of Appeal, Fifth Circuit. The court of appeal affirmed the conviction and sentence.[4] While the court found several trial errors, the court determined that the errors were harmless.

LAW AND DISCUSSION
Defendant was found guilty of violating La.Rev.Stat. 14:42, which provides in pertinent part:
A. Aggravated rape is a rape committed upon a person sixty-five years of age or older or where the anal or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
* * *
(4) When the victim is under the age of twelve years. Lack of knowledge of the victim's age shall not be a defense.
* * *
D. (1) Whoever commits the crime of aggravated rape shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.
In order to secure a conviction, the state is required to prove penetration occurred. On appeal, defendant maintains the state failed to prove the essential element, penetration. He claims that the prosecution erroneously admitted into evidence facts regarding his prior adjudication for sexual battery. According to defendant, the information regarding his adjudication tainted the jury and resulted in an unfair trial. In his writ to this court, defendant complains that the errors committed by the trial court constitute reversible error and should not have been determined harmless errors. We disagree.

Harmless Error Analysis
The history of Louisiana's harmless error rule makes clear that there has been one common directive: appellate courts should not reverse convictions for errors unless the accused's substantial rights have been violated. State v. Johnson, 94-1379 (La.11/27/95), 664 So.2d 94. This comports with the general theory that "appeals in criminal cases are not granted merely to test the correctness of the trial court's ruling, but only to rectify injuries caused thereby." State v. Saia, 212 La. 868, 876, 33 So.2d 665, 668 (1947).
This Court adopted the federal test announced in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), in determining whether a harmless error has occurred. Chapman set forth a practical guide for determining whether substantial rights of the accused have been violated. State v. Gibson, 391 So.2d 421 *1148 (La.1980). Furthermore, Chapman tests whether it appears "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." 386 U.S. at 24, 87 S.Ct. at 828. Chapman further holds that an error does not "contribute" to the verdict when the erroneous trial feature is unimportant in relation to everything else the jury considered on the issue. Yates v. Evatt, 500 U.S. 391, 403, 111 S.Ct. 1884, 1893, 114 L.Ed.2d 432 (1991).
Chapman was refined in Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993).[5] The Sullivan inquiry "is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error." Id., 113 S.Ct. at 2081. This Court adopted the Sullivan refinement of Chapman. See State v. Code, 627 So.2d 1373, 1384 (La.1993); State v. Bourque, 622 So.2d 198, 241 (La.1993).
Applying the above Sullivan factor, we must now determine whether the guilty verdict rendered in this trial was surely unattributable to the error.

ASSIGNMENT OF ERROR NO. 1
The trial court erred in denying defendant's motion to suppress a statement to his probation officer.
Defendant argues to this court that the statement made to his probation officer was improperly admitted into evidence. He maintains Louisiana courts have held that custodial interrogation is not limited to actual arrest but expands to situations in which the defendant feels that he is deprived of his right of freedom. See State v. Menne, 380 So.2d 14, 17 (La.1980), State v. Foret, 96-281 (La.App. 5th Cir.11/14/96), 685 So.2d 210.
At trial, the defendant's probation officer, Wanda Brown, testified regarding a phone call with the defendant. Brown stated that the telephone call was initiated by the defendant. She asked the defendant if "he wanted to talk about the alleged charges against him." Defendant said, "yes." Defendant stated he had sex with the victim, detailing that he undressed him, undressed himself, and got on top of the victim. Brown asked the defendant if he penetrated the victim, to which the defendant replied, "Well, the doctor said I didn't." Brown told the defendant, "You should know if you did [penetrate]. Did you penetrate him?" She said the defendant replied, "Yes."
Defendant maintains that his probation officer was fully aware that he was under investigation for the rape of the minor victim and should have advised him of his right to remain silent under Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). However, defendant fails to recognize that *1149 Miranda warnings are applicable only when it is established that the defendant has been subject to a "custodial interrogation." 384 U.S. at 444, 86 S.Ct. at 1612. Moreover, our legislature has created additional safeguards to insure that statements, taken from a criminal defendant, are admissible only where the statements are free and voluntary, and not made under the influence of fear, duress, intimidation, menaces, threats, inducements, or promises. La. R.S. 15:451; La.Code.Cr.P. art. 703(D).
As stated above, Miranda sets forth the doctrine that the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. Miranda at 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694.[6] However, Miranda only applies where the party performing the "interrogation" is a "state actor." See State v. Martin, 94-252 (La.App. 5 Cir. 10/12/94), 645 So.2d 752, writ denied, 94-2787 (La.3/10/95), 650 So.2d 1174.
In West v. Atkins, 487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988), the United States Supreme court defined state action as "the deprivation caused by the exercise of some right or privilege created by the State ... or by a person for whom the State is responsible," and "the party charged with the deprivation must be a person who may fairly be said to be a state actor." The Court further stated that "[S]tate employment is generally sufficient to render the party a state actor." Id at 47, 108 S.Ct 2250. In the instant case, the statement was made to a Jefferson Parish probation officer, an agency of the state. Therefore, the probation officer was a "state actor."
Finding that Brown was a state actor, our next inquiry is whether the defendant had undergone a custodial interrogation. In Miranda, the Supreme Court defined "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." 384 U.S. at 444, 86 S.Ct. at 1612. "[T]he only relevant inquiry in determining whether there was a formal arrest or a restraint on the freedom of movement of the degree associated with an arrest is `how a reasonable man in the suspect's position would have understood the situation.'" Berkemer v. McCarty, 468 U.S. 420, 442, 104 S.Ct. 3138, 3151, 82 L.Ed.2d 317 (1984). Accordingly, in order to determine whether the defendant was in custody, the court must consider whether a reasonable person in the defendant's circumstances would have understood his conversation with the probation officer to constitute a restraint on freedom of movement of the degree associated with formal arrest.
We agree with the court of appeal that the defendant here was not in the type of custody envisioned by Miranda. In Minnesota v. Murphy, the Supreme Court stated that the term "in custody" relates primarily to situations where there is a "formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." Minnesota v. Murphy, 465 U.S. 420, 433, 104 S.Ct. 1136, 1145, 79 L.Ed.2d 409 (1984). In the instant case, the defendant was not under arrest; in fact, he was not even in the physical presence *1150 of the probation officer, but was only speaking to her on the telephone. We also note, defendant could have terminated the telephone call at any time by simply hanging up the phone. Finally, the record does not reflect that defendant was forced to remain on the phone nor was he given any inducement to make a statement to the probation officer. Accordingly, we find no merit to defendant's contention that he was subject to a "custodial investigation."[7]
Based on the analysis above, it does not appear that defendant's statement was not made freely and voluntarily, nor was it made under the influence of fear, duress, intimidation, menaces, threats, inducements, or promises. However, in his application to this Court, defendant submits that the State failed to meet its burden by affirmatively showing that the statements were free and voluntarily.
The defendant was a juvenile at the time of his statement to Ms. Brown. "The confession of an accused of any age is valid only if it was given knowingly and voluntarily." State v. Fernandez, 96-2719 (La.4/14/98), 712 So.2d 485, 487. The determination of whether a juvenile's incriminating statements are admissible is made on the totality of the circumstances surrounding the interrogation. Such circumstances include "evaluation of the juvenile's age, experience, education, background, and intelligence." Fare v. Michael C., 442 U.S. 707, 725, 99 S.Ct. 2560, 2572, 61 L.Ed.2d 197 (1979).
At the time of his arrest, the defendant was a sixteen-year-old juvenile who had been previously adjudicated delinquent; thus, this was not the defendant's first experience with the criminal justice system. The circumstances do not indicate that defendant was unable to understand the nature of his actions. The defendant initiated the telephone call; had previously been adjudicated delinquent; was free to discontinue the phone conversation at any time and was under probation for two years at the time of the phone call. We find there is no indication that defendant was of insufficient intelligence to understand the ramifications of his actions. He was not coerced, worn down by trickery or improper interrogation tactics. On these facts, we find that the defendant voluntarily and knowingly spoke to his probation officer. Accordingly, we likewise find no merit to defendant's assignment of error that the trial court did not err in refusing to suppress defendant's statements to his probation officer.

ASSIGNMENT OF ERROR NO. 2
The trial court erred in admitting evidence of other crimes.
The defendant argues that the trial court erred by admitting evidence of the defendant's juvenile adjudication of delinquency for the sexual battery of a three-year-old girl. Specifically, the defendant challenges the admission of testimony by the defendant's social worker, Philip Hemphill, and Detective Sergeant Kelly Jones.
The issue raised by the defendant regarding the admission of other crimes evidence in a case involving the rape of a minor was recently before this court in State v. Kennedy, 00-1554 (La.4/3/01), 803 So.2d 916. In Kennedy, the defendant was charged with aggravated rape of the a child under the age of twelve. In its case in chief, the state attempted to introduce *1151 evidence of an unadjudicated rape of another minor which had occurred sixteen years earlier. The trial court allowed the evidence, noting that the defendant's "lustful disposition" toward minor children was relevant to the element of specific intent. This court reversed. The court pointed out that the crime at issue, i.e. aggravated rape, is a general intent crime; thus, the only issue pertinent was whether penetration occurred. Therefore, since the evidence regarding the other crime did not bear upon an essential element of the offense, this court declined to allow the other crimes evidence. However, this court did not create a steadfast rule that other crimes evidence could never be admissible, rather it noted that evidence of other crimes may be admissible if the state is able to demonstrate that the other crimes evidence is independently relevant under a statutory or judicially-recognized exception to this general exclusionary rule. Id.
Detective Sergeant Jones testified regarding her investigation of the sexual battery of the three-year-old girl. According to Detective Sergeant Jones, the defendant took a three-year-old girl into her home, undressed her, undressed himself, touched the girl's vaginal area, and inserted his penis into her vagina. Jones testified she did not arrest the defendant for rape, but for sexual battery, and the defendant was adjudicated delinquent on the charge of sexual battery.
As to Hemphill's testimony, Hemphill explained to the jury that the defendant had originally been referred to the group therapy by the juvenile probation department. Hemphill then testified that the defendant recounted the events of the incident involving the three-year-old girl. His testimony was consistent with that of Detective Sergeant Jones.
In its brief to this court, the state concedes that aggravated rape is a general intent crime. As we stated in Kennedy, evidence of other crimes of sexual offenses against children is not admissible to prove intent, as intent is not at issue in a general intent crime. Under Kennedy, the statements of Hemphill and Detective Sergeant Jones were clearly inadmissible. While the court of appeal did not have the benefit of our decision in Kennedy, the reasoning espoused in its opinion is consistent with Kennedy. Since we have found this evidence to be inadmissible, we must now determine whether the guilty verdict rendered in this trial was unattributable to the error in allowing the evidence regarding the juvenile adjudication.
The sole issue before the jury was whether penetration occurred. Defendant denies that he penetrated the victim. In fact, he admits to touching the victim's genitals but denies that he penetrated the victim. Omitting the testimony regarding the previous adjudication, the jury was left to consider the following: (1) the statement of Hemphill that the defendant told the group, three days after the incident, that he penetrated the victim; (2) the testimony of Wanda Brown, who testified that defendant admitted to her that he re-offended and had penetrated the victim; and (3) the testimony of the victim, who gave testimony about the act.
This court has reiterated that great weight is afforded to the victim's testimony, as the victim's testimony, standing alone, can prove that the act occurred, and thus, no further evidence of intent is necessary. See State v. Ledet, 345 So.2d 474, 478 (La.1977); State v. Acliese, 403 So.2d 665, 670 (La.1981), (Dixon, J., dissenting) (discussing [State v.] Moore [, 278 So.2d 781 (La.1973)]). In light of the victim's testimony regarding defendant's actions, as well as other witnesses' testimony and the defendant's inculpatory statements, we find the jury's verdict in *1152 this case was "surely unattributable" to the error.

ASSIGNMENT OF ERROR NO. 3
The trial court erred in failing to give the jury a limiting instruction prior to the admission of other crimes evidence.
Although defendant objected to the admission of the prior adjudication, he submits that the trial court committed further error by failing to give the jury a limiting instruction at the time State v. Prieur, requires the trial court, at the request of the defendant, to offer a limiting instruction to the jury at the time the evidence is introduced. The court also must charge the jury at the close of the trial as to the limited purpose for the other crimes evidence and that the defendant cannot be convicted for any crime other than the one charged or any responsive offenses to it. State v. Prieur, 277 So.2d 126, 130 (La.1973).
Prior to the admission of Detective Sergeant Jones' testimony relating to the defendant's previous crime, the defense asked the trial court to give the jury a limiting instruction. The trial court refused the request at the time, but such an instruction was included in the jury charge presented at the trial's conclusion. In State v. Sanders, this concluded that not every violation of pre-trial procedures requires reversal. State v. Sanders, 93-0001 (La.11/30/94), 648 So.2d 1272,1284. Our decision further required a defendant show prejudice before mounting a complaint. Id. The refusal of the trial judge to timely give the limiting instruction constitutes a trial error which is subject to harmless error analysis.
The trial judge charged the jury at the conclusion of trial, thus, the procedural deficiency, failure to give the limiting instruction, is not sufficient grounds to warrant reversal. There is no indication that the trial error had any influence on defendant's conviction. Accordingly, the trial error did not contribute to defendant's conviction and was harmless error.

ASSIGNMENT OF ERROR NO. 4
The trial court erred in denying defendant's objection to the hearsay evidence of other crimes.
During Detective Sergeant Jones' trial testimony regarding defendant's prior offense, Jones stated that the defendant "inserted his penis in her [the victim's] vagina." The defendant objected. In his application to this court, defendant argues that this statement was inadmissible hearsay.
Hearsay is an oral or written assertion, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted. La. C.E. arts. 801(A)(1), 801(C). Hearsay evidence is not admissible except as otherwise provided by the Code of Evidence or other legislation. La. C.E. art. 802. Hearsay is excluded because the value of the statement rests on the credibility of the out-of-court asserter, who is not subject to cross-examination and other safeguards of reliability. State v. Martin, 458 So.2d 454, 460 (La.1984).
The testimony of a police officer may encompass information provided by another individual without constituting hearsay, if it is offered to explain the course of the police investigation and the steps leading to the defendant's arrest. State v. Monk, 315 So.2d 727, 740 (La. 1975); See also State v. Wille, 559 So.2d 1321, 1331 (La.1990); State v. Smith, 98-1417 (La.6/29/01), 793 So.2d 1199. However, this exception does not allow the state carte blanche authority to bring before the *1153 jury the substance of the out-of-court information that would otherwise be barred by the hearsay rule. State v. Wille, 559 So.2d 1321, 1331 (La.1990); State v. Hearold, 603 So.2d 731, 737 (La.1992).
In the instant case, Detective Sergeant Jones testified regarding her investigation and to the substance of what she learned. Unlike the cases relied on above, Jones' testimony related to a prior adjudication. Her testimony was not related specifically to the actions which led to the defendant's arrest in this matter. Thus, it is unlikely that Jones' testimony would fall under the latter or any exception to the hearsay rule.
Assuming that the evidence was improperly admitted, we must consider whether the admission of the evidence was unattributable to the verdict. Factors to consider in making this determination include: (1) the importance of the witness's testimony; (2) the cumulative nature of the testimony; (3) the existence of corroborating or contradictory evidence regarding the major points of the testimony; (4) the extent of cross-examination permitted; and (5) the overall strength of the state's case.
Jones testified that the defendant removed the clothing of a three-year-old girl and "inserted his penis in her vagina." Hemphill likewise testified regarding the defendant's prior adjudication. This testimony regarding the defendant's penetration of the prior victim was not repeated elsewhere in the trial and, therefore, was not cumulative. Furthermore, defendant was afforded ample opportunity to cross examine Jones. Finally, and most importantly, the state had an overwhelming amount of evidence supporting the conviction. As stated above, the victim's testimony bolstered by the defendant's admission to Hemphill and Brown were more conclusive than the testimony of Jones. Accordingly, we conclude the admission of the testimony, viewed in light of all the evidence, was harmless error.

ERROR PATENT REVIEW
We likewise find no error in the Court of Appeal's finding that the trial court failed to advise the defendant of the delay for post-conviction relief pursuant to La. C.Cr.P. art. 930.8. Accordingly, the district court is ordered to send written notice of the amended prescriptive period to defendant within ten days of the rendition of this opinion and to file written proof in the record that defendant received said notice.

CONCLUSION
The erroneous admission of other crimes evidence is a trial error subject to harmless error analysis on appeal. State v. Johnson, 664 So.2d at 102. In the instant case, the sole issue was whether penetration occurred. The victim testified that the defendant penetrated him; the defendant admitted to penetrating the victim, albeit he later recanted that statement; the defendant's probation officer testified that defendant told her, days after the incident, that he penetrated the victim; and defendant's social worker testified that defendant admitted to penetrating the victim. Thus, the evidence, taken as a whole, supports defendant's conviction. Accordingly, we find no error in the ruling of the lower courts.

DECREE
For the reasons assigned, the judgments of the lower courts are affirmed. The matter is remanded and the trial court is ordered to notify the defendant of the post conviction deadline.
AFFIRMED.
*1154 JOHNSON, J., dissents and assigns reasons.
CALOGERO, C.J., dissents and assigns reasons.
KNOLL, J., concurs in part and assigns reasons.
KIMBALL, J., dissents for reasons assigned by CALOGERO, C.J.
JOHNSON, J., dissenting.
I dissent from the majority's holding defendant's statement to his probation officer was admissible. In my view, defendant's probation officer should have advised him of his rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), prior to questioning him about the incident.
The record amply demonstrates defendant had been "deprived of his freedom of action" at the time the incriminating statements were made. Defendant was on probation and undergoing court-ordered individual and group therapy. Defendant's mother called defendant's social worker and expressed a concern that he had re-offended. Thereafter, during one of the court-ordered therapy sessions, defendant made some incriminating statements. Subsequently, the social worker called defendant's probation officer, who proceeded to question defendant about the incident without advising him of his rights under Miranda.
For the foregoing reasons, I would reverse defendant's conviction, vacate his sentence, and order a new trial.
CALOGERO, Chief Justice, dissents and assigns reasons.
The majority has it right when it finds that the evidence of the unrelated prior sexual offense was erroneously admitted in evidence at the defendant's trial. However, where the majority goes wrong is in concluding that the error was harmless beyond a reasonable doubt, essentially reasoning that the state's evidence was otherwise sufficient to support the jury's verdict of guilty of aggravated rape.
Harmless error review "looks to the basis on which `the jury actually rested its verdict.'" Sullivan v. Louisiana, 508 U.S. 275, 279, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993)(emphasis in original), quoting Yates v. Evatt, 500 U.S. 391, 404, 111 S.Ct. 1884, 114 L.Ed.2d 432 (1991). Therefore, contrary to the majority's reasoning, "[t]he inquiry ... is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error." Sullivan, 508 U.S. at 279, 113 S.Ct. at 2081 (emphasis in original). As Justice Scalia explained in Sullivan, "That must be so, because to hypothesize a guilty verdict that was never in fact renderedno matter how inescapable the findings to support that verdict might be would violate the jury-trial guarantee." 508 U.S. at 279, 113 S.Ct. at 2081-82.
When reviewed with the proper focus, the erroneous introduction of the other crimes evidence in this case, particularly the non-cumulative hearsay evidence of the prior sexual penetration of another child, was not harmless error. The erroneously admitted evidence of a prior sexual battery involving a different minor on an earlier occasion was certainly damaging to the defendant's case. The prejudice mounted when the trial court allowed, over a continuing defense objection, at least three of the state's witnesses to discuss details of the defendant's prior juvenile adjudication for the sexual battery with varying degrees of specificity. When the trial court overruled repeated defense objections and permitted a police officer witness to relate *1155 rank hearsay testimony that the prior sexual battery actually involved penetration by the defendant, there arose a reasonable possibility that the inadmissible evidence might have contributed to the verdict.
As the majority acknowledges, the sole issue at the present trial for aggravated rape was whether penetration occurred. Ante, p. 13, p. 1151. Consequently, evidence that the defendant had sexually penetrated a different child was "but another way of demonstrating that he has the propensity to commit such crimes and that the act charged against him probably occurred just as the present victim claims." State v. Kennedy, 00-1554, p. 14 (La.4/3/01), 803 So.2d 916, 925. It is unreasonable to expect jurors not to be affected by such evidence, Kennedy, 00-1554 at 5, 803 So.2d at 920, particularly since the trial court here rebuffed the defendant's timely request for a limiting instruction and the trial court's failure to give such an instruction was not subsequently cured by the imprecise directions contained in the general jury charge.[1]
Under the circumstances of this case, the majority cannot fairly conclude beyond a reasonable doubt that the improperly admitted evidence did not contribute to the jury's verdict of guilty of aggravated rape of a child. Given that the defendant denied having anally penetrated the present victim, the non-cumulative hearsay evidence regarding the prior sexual penetration of another child was clearly important to the state in proving that the defendant had in fact sexually penetrated the present victim: The evidence was obviously introduced for the truth of the matter asserted therein, in the state's case-inchief, via the testimony of an otherwise credible law enforcement officer, and without opportunity for cross-examination of the victim or out-of-court declarant. This testimony effectively placed the defendant on trial again for the prior offense, now up-graded from sexual battery to aggravated rape, and may have encouraged the jury to convict the defendant of the present charge of aggravated rape for his commission of the prior sexual penetration. Finally, considering also the lengthy jury deliberation and the ten-to-two vote to convict, it cannot be fairly said that the jury's verdict was surely unattributable to the errors.
In my view, there can be no confidence in the outcome of this trial. The defendant merits a new trial. Accordingly, I respectfully dissent from the majority's decision.
KNOLL, Justice, concurring.
Although I agree with the majority opinion, I concur to offer additional reasons in support of the conclusions reached therein.
In State v. Malone, 403 So.2d 1234, 1239 (La.1981), Chief Justice Calogero, then Justice, writing for the majority, recognized that "[a]n individual on probation does not have the same freedom from governmental intrusion into his affairs as does the ordinary citizen." In addition, the majority in Malone stated that "[a] probationer has essentially the same status as a *1156 parolee; in our view both must necessarily have a reduced expectation of privacy." Id. at 1238. Although Malone did not reach the question of whether admissions to a probation officer required prior Miranda warnings, in State v. Lassai, this Court stated:
Defendant's admissions made to his probation officer were properly admitted by the trial judge in spite of the absence of Miranda warnings; the Miranda rule has not been extended to probation hearings.
State v. Lassai, 366 So.2d 1389, 1390 (La. 1978), citing United States v. Johnson, 455 F.2d 932 (5th Cir.1972), cert. denied, 409 U.S. 856, 93 S.Ct 136, 34 L.Ed.2d 101 (1972). See also State v. Edwards, 440 So.2d 845 (La.App. 2 Cir.1983) (holding that a probationer's admissions to a probation officer are admissible at a revocation hearing in spite of the absence of Miranda warnings). Even though Lassai did not involve the use of the defendant's admissions at a separate criminal proceeding to adjudicate his guilt of the newly committed crime, it seems logical to conclude that these admissions would be equally admissible in such an instance.[1] See United States ex rel. Santos v. New York State Bd. of Parole, 441 F.2d 1216, 1218 (2nd Cir.1971), cert. denied, 404 U.S. 1025, 92 S.Ct. 692, 30 L.Ed.2d 676 (1972) (finding that "[t]o hold that evidence obtained by a parole officer in the course of carrying out this duty cannot be utilized in a subsequent prosecution would unduly immunize parolees from conviction.").
Moreover, as Malone recognized, a person on probation has severely truncated constitutional rights because of his status as a probationer. Malone, 403 So.2d at 1238-39. In State v. Patrick, 381 So.2d 501 (La.1980), we found that a parole officer's warrantless search of a parolee's person and residence was reasonable, even though less than probable cause was shown. Likewise, because the status of probationer is equated to a parolee, I find it important that as a condition for parole, a parolee "[p]romptly and truthfully [shall] answer all inquiries directed to him by the probation and parole officer." LA.REV. STAT. ANN. § 15:574.4(g). In the present case, it was under just such a scenario that the defendant made admissions to his probation officer.
I write to further express my opinion on the admissibility of the other crimes evidence which the majority finds inadmissible under State v. Kennedy, XXXX-XXXX (La.4/3/01), 803 So.2d 916.[2] In the present case, the defendant contested the occurrence of penetration, an essential element of the aggravated rape charge. Because the expert in pediatric forensic medicine was unable to find any indication of sexual abuse, I find that the evidence of the prior crime which involved penetration was admissible as evidence of pattern because both crimes have numerous similarities. As we stated in State v. Jackson, 625 So.2d 146 (La.1993), at least one of the enumerated purposes in LA.CODE EVID. art. 404(B) "must be at issue, have some independent relevance, or be an element of the crime charged in order for the evidence to be admissible." Jackson, 625 So.2d at 149. Thus, it is clear to me that *1157 the other crimes evidence related to a genuinely controverted issue and was not introduced in the present case solely to paint the defendant as a person of criminal character. Accordingly, I find that the trial court properly admitted this other crimes evidence and do not find it necessary to reach the harmless error argument which the majority ultimately relies upon.
NOTES
[*] Retired Judge Robert L. Lobrano, assigned as Associate Justice Pro Tempore, participating in the decision.
[1] Ethel Sampey is defendant's mother's stepsister and is the grandmother of C.M.
[2] Ms. Sampey described the clothing that C.M. was wearing at the time of the incident as his typical sleeping attire.
[3] C.M. knew the defendant by the name "A.J."
[4] The court remanded the matter to the trial court to cure a procedural defect. It appears the trial court erred by failing to notify the defendant of the post-conviction relief deadlines.
[5] In Arizona v. Fulminante, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991), a five-person majority of the United States Supreme Court distinguished between "trial errors," which may be reviewed for harmless error, and "structural errors," which defy analysis by harmless error standards.

Trial error occurs during the presentation of the case to the trier of fact and may be quantitatively assessed in the context of the other evidence to determine whether its admission at trial is harmless beyond a reasonable doubt. A structural error is one which affects the framework within which the trial proceeds. Id., 499 U.S. at 307-311, 111 S.Ct. at 1264-1265. Structural defects include the complete denial of counsel. See Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); adjudication by a biased judge. This Court has acknowledged the distinction between trial error and structural error. See State v. Cage, 583 So.2d 1125 (La.1991).
[6] Those safeguards, commonly known as the Miranda warnings, are as follows: "Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." Id.
[7] This court has held that a defendant's statement made to his probation officer was properly admitted by the trial judge despite the absence of Miranda warnings. State v. Lassai, 366 So.2d 1389, 1390, (La.1978).
[1] Notably, the state, as the majority finds, failed to establish a legitimate purpose for introducing the other crimes evidence under La.Code Evid. art. 404(B). In addition, the trial court's general instructions, in scattershot fashion, merely enumerated for the jury all of the grounds for which other crimes evidence may be admitted, thereby inviting the jurors to pick and choose, rather than specify the particular grounds, knowledge and intent, for which the evidence was ostensibly introduced and, thus, actually "limit" the jury's consideration of the other crimes evidence. In effect then, the jury was allowed free rein to consider the improperly admitted other crimes evidence in any fashion it deemed appropriate.
[1] In actuality, the question raised herein was presented in just such a setting in State v. Malone, 403 So.2d 1234 (La.1981). However, the question remained unanswered in that opinion because it was found that the defendant's admissions were not made to the probation officer. Instead, the defendant's admission of guilt was made to the arresting officers after he had been Mirandized.
[2] I was not on the panel which decided Kennedy. Had I been a member of that panel, I would have joined the dissenting justice.