hTHIBODEAUX, Judge.
On writ application to this court, we will review the trial court’s ruling, which denied defendant’s, B.S., motion to suppress all statements, confessions, and physical evidence obtained during his meeting with a child protection investigator in which a law enforcement officer was present. According to the defendant, statements made during the investigatory meeting with Mr. Martin Caesar, the child protection investigator, were later used to charge him with the crimes of aggravated rape, attempted aggravated rape, and two counts of aggravated incest. The defendant alleges that the questioning amounted to a custodial interrogation and that neither Mr. Caesar nor the police officer informed him of his Miranda rights prior to his first confession. As to defendant’s second confession, defendant asserts that the second statement, taken at the Sheriffs Office, was tainted as it was a fruit of the first confession. Defendant charges that the issuance of Miranda warnings prior to the second confession would not render these statements admissible since the taint had already occurred.
We reverse in part, and affirm in part. The trial court erred in failing to suppress the first confession as the child protection investigator was a “state actor.” Miranda warnings should have been issued prior to the defendant’s statements. However, we disagree that defendant’s second confession, which was videotaped, is a “fruit” of the first confession. Defendant was Mir-andized prior to the videotaped confession. He signed a statement that he understood his rights and voluntarily waived them. Thus, the trial court properly denied defendant’s motion to suppress the second confession.
_LL

ISSUES

We shall consider:
(1) whether the trial court erred in denying defendant’s motion to suppress statements given in violation of the Miranda warnings?
(2) whether the trial court erred in its finding that the issuance of Miranda warnings were not necessary during the investigative interrogation of the defendant by Mr. Ceasar, though Detective Primeaux was present?
(3) whether the trial court erred in its failure to find that Mr. Ceasar was not only a state actor, but also an agent of the Sheriffs Department?
(4) whether the trial court erred in not finding that Detective Primeaux had probable cause to arrest the defendant and that the defendant was in police custody, therefore requiring Miranda warnings prior to any interrogation of the defendant regardless of who administered the questions?
(5) whether the defendant’s videotaped statements were a fruit of the first confession that should have been suppressed?
II.

FACTS

Defendant, B.S., was charged with aggravated rape, attempted aggravated rape, and two counts of aggravated incest against his two minor stepdaughters. Upon receiving a complaint that the defendant was sexually abusing the two young girls, Mr. Ceasar interviewed the defendant. As Mr. Ceasar questioned him, Detective Michael Primeaux, a detective with the Calcasieu Parish Sheriffs Department assigned to this case, was present, but asked no questions of the |3defendant. The defendant made incriminating statements during the course of the interview.
*1209 After the investigator completed his interview, Detective Primeaux began to question the defendant, but only after he had given the defendant his Miranda warnings. At that time, the defendant signed a statement explaining that he understood his Miranda rights and voluntarily waived them. After the defendant signed the waiver form, Detective Pri-meaux informed the defendant that he was under arrest for aggravated rape and aggravated incest.
Shortly after the defendant was arrested, the defendant agreed to give a videotaped statement at the Sheriffs Office. The defendant basically reiterated the statements he had made previously to Mr. Ceasar on the videotape.
On August 29, 2002, the defendant filed a motion to suppress the statements he made to Mr. Caesar and Detective Pri-meaux. Defendant’s motion to suppress was denied. On writ application to this court, defendant asserts that the trial court erred in denying his motion to suppress.
III.

LAW AND DISCUSSION

Miranda Warnings and State Action

The defendant contends that the confession he gave Mr. Ceasar should be suppressed because it was given without Miranda warnings and was not given freely and voluntarily. The defendant claims that when he was interviewed by Mr. Cea-sar in the presence of Detective Primeaux, he was subject to a custodial interrogation by a state actor. Thus, he should have been given the Miranda warnings before being interviewed.
|4The supreme court has stated the following regarding the necessity of Miranda warnings:
Miranda sets forth the doctrine that the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. Miranda at 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694. [Footnote omitted.] However, Miranda only applies where the party performing the “interrogation” is a “state actor.” See State v. Martin, 94-252 (La.App. 5 Cir. 10/24/94), 645 So.2d 752, writ denied, 94-2787 (La.3/10/95), 650 So.2d 1174.
In Wesi v. Atkins, 487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988), the United States Supreme [C]ourt defined state action as “the deprivation caused by the exercise of some right or privilege created by the State ... or by a person for whom the State is responsible,” and “the party charged with the deprivation must be a person who may fairly be said to be a state actor.” The Court further stated that “[S]tate employment is generally sufficient to render the party a state actor.” Id. at 47, 487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d 40.
[0]ur next inquiry is whether the defendant had undergone a custodial interrogation. In Miranda, the Supreme Court defined “custodial interrogation” as “questioning, initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.” 384 U.S. at 444, 86 S.Ct. at 1612. “[T]he only relevant inquiry in determining whether there was a formal arrest or a restraint on the freedom of movement of the degree associated with an arrest is ‘how a reasonable man in the suspect’s position would have under *1210 stood the situation.’ ” Berkemer v. McCarty, 468 U.S. 420, 442, 104 S.Ct. 3138, 3151, 82 L.Ed.2d 317 (1984). Accordingly, in order to determine whether the defendant was in custody, the court must consider whether a reasonable person in the defendant’s circumstances would have understood his conversation with the probation officer to constitute a restraint on freedom of movement of the degree associated with formal arrest.
State v. Maise, 00-1158, pp. 10-11 (La.1/15/02); 805 So.2d 1141, 1149.
IsThe State argues, based on State v. Hathom, 395 So.2d 783 (La.1981), that a case worker involved in child protection services does not have to administer Miranda warnings before interviewing a defendant since the defendant has not been placed under arrest at the time of the interview, and the caseworker is not a law enforcement officer with powers of arrest. In Hathom, the supreme court stated, “Clearly, no Miranda warnings were required, as defendant’s statements were made in a noncustodial situation and defendant was not being subjected to interrogation by a police officer.” Id. at 785. (Emphasis added). On the other hand, the supreme court in Maise applied the Miranda requirements to any person who was a “state actor,” not just a person who was a police officer or law enforcement officer. Under the definition of “state actor” used in Maise — i.e., anyone employed by the state — Mr. Ceasar, a child protection investigator, would be considered a “state actor.”
The court in Maise cited State v. Martin, 94-252 (La.App. 5 Cir. 10/12/94); 645 So.2d 752, writ denied, 94 2787 (La.3/10/95); 650 So.2d 1174, in support of its assertion that Miranda applies when the party interrogating is a “state actor.” In Martin, the fifth circuit cited Colorado v. Connelly, 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986), quoting its holding that “in order for a defendant to claim his confession is inadmissible because it was involuntary in violation of the Due Process Clause of the United States Constitution, there must be a state actor.” Martin, 645 So.2d at 753.
In Colorado v. Connelly, a defendant who claimed he suffered from chronic schizophrenia made statements to an off-duty uniformed officer, without solicitation, that he had murdered someone and wanted to talk about it. The officer immediately advised the defendant of his Miranda rights, and more statements followed. The Colorado Supreme Court affirmed the suppression of all statements, | (finding the initial statement was not the “product of a rational intellect and a free will,” and the subsequent waiver of rights was invalid because of the defendant’s mental condition. Connelly, 107 S.Ct. at 519. The Colorado Supreme Court found that “the very admission of the evidence in a court of law was sufficient state action to implicate the Due Process Clause of the Fourteenth Amendment to the United States Constitution.” Id.
The United States Supreme Court challenged the Colorado Supreme Court’s finding. The Supreme Court held that “[cjoercive police activity is a necessary predicate to the finding that a confession is not ‘voluntary’ within the meaning of the Due Process Clause of the Fourteenth Amendment.” Id. at 522. (Emphasis added).
In Martin (the case cited by the supreme court in Maise in support of its “state actor” proposition), the fifth circuit further stated that if a state actor is involved, a defendant must be advised of his Miranda rights before making a statement. The court cited State v. Perry, 502 So.2d 543 (La.1986), cert. denied, 484 U.S. 872, 108 S.Ct. 205, 98 L.Ed.2d 156. In *1211 Perry, the supreme court addressed the issue of whether or not a defendant’s aunt was acting as an agent of the sheriffs office when the defendant made a statement to the aunt. After reviewing the circumstances surrounding the aunt’s visits with the defendant, the court found the aunt was not acting on behalf of the sheriffs office. The court held:
After reviewing the circumstances under which the statements were given and the applicable ease law, we find no error in their admission by the lower court. This is especially required after comparing their instant situation to the more compelling facts in [State v.] Loyd, [425 So.2d 710 (La.1982)], in which this Court refused to exclude the statements given by the defendant to his mother. We find Mrs. Lyon was not acting as an agent for the sheriff. She did not question him on the two dates he gave the unsolicited confessions. Both statements 17were made when no police were present, so they were not the product of custodial interrogations.
Id. at 554.
In the above cases, all “state actors” were associated with law enforcement. However, none of the above cases broadly defined “state actor” as a person employed by the state as in Maise, which derived its definition from West v. Atkins, 487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). In West, the Supreme Court defined “state action” as the deprivation ... caused by the exercise of some right or privilege created by the State ... or by a person for whom the State is responsible ... ’ ” Id. at 2255. The Court also stated that “ ‘the party charged with the deprivation must be a person who may fairly be said to be a state actor.’ ” Id. Finally, the Court found, “ ‘[S]tate employment is generally sufficient to render the defendant a state actor.’ ” Id.
Obviously, defining “state actor” for purposes of Miranda as any person employed by the State will include persons who are not involved with law enforcement. However, we are not sure whether the United States Supreme Court intended “state actors” for purposes of Miranda to be defined so broadly. In Miranda, the Supreme Court summarized its holding as follows:
Our holding will be spelled out with specificity in the pages which follow but .briefly stated it is this: the prosecution may not use statements, whether exculpatory or inculpatory, stemming form custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. [Footnote omitted].
Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966).
| sNonetheless, we find that even using a more narrow definition of “state actor” in the present case — i.e., one acting as an agent of law enforcement — Mr. Ceasar was a “state actor.” Mr. Ceasar filed a report at the police station, reviewed the interviews of the children with Detective Primeaux and told Detective Primeaux that he would be interviewing the Defendant the next day. Detective Primeaux was present for the interview and took notes. Certainly, Mr. Ceasar knew that the statements he was eliciting from the defendant could be used by Detective Pri-meaux to arrest the defendant. Thus, Mr. Ceasar would be considered a “state actor” even under such a narrow definition.

*1212
Custodial Interrogation and Probable Cause

Having concluded that Mr. Ceasar was an agent of law enforcement in this particular case, this court must decide whether the defendant was subject to a “custodial interrogation” while being questioned by Mr. Ceasar. The supreme court in Maise stated the following regarding a “custodial interrogation:”
In Miranda, the Supreme Court defined “custodial interrogation” as “questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.” 384 U.S. at 444, 86 S.Ct. at 1612. “[T]he only relevant inquiry in determining whether there was a formal arrest or a restraint on the freedom of movement of the degree associated with an arrest is ‘how a reasonable man in the suspect’s position would have understood the situation.’ ” Berkemer v. McCarty, 468 U.S. 420, 442, 104 S.Ct. 3138, 3151, 82 L.Ed.2d 317 (1984).
Maise, 805 So.2d at 1149.
Louisiana Constitution Article 1, Section 13 provides in pertinent part the following concerning the rights of an accused:
When any person has been arrested or detained in connection with the investigation or commission of any offense, he shall be advised fully of the reason for his arrest |9or detention, his right to remain silent, his right against self incrimination, his right to the assistance of counsel and, if indigent, his right to court appointed counsel.
Article 1, § 13 uses the word “detained” rather than the word “custody.” In State v. Thompson, 399 So.2d 1161 (La.1981), the supreme court discussed certain factors relevant in determining whether a person has been “detained” for purposes of Miranda:
The determination of whether the detention is significant is to be made objectively from the totality of the circumstances .... Factors relevant to the determination include (1) whether the police officer had reasonable cause under C.Cr.P. 213(3) to arrest the inter-rogee without a warrant; (2) the focus of the investigation on the interrogee; (3) the intent of the police officer, determined subjectively; and (4) the belief of the interrogee that he was being detained, determined objectively. Whether or not there is a custodial interrogation under federal terminology or a significant detention under Louisiana terminology must be determined on a case-by-case basis. State v. Ned, 326 So.2d 477, 479 (La.1976).
Id. at 1165. The supreme court has interpreted the “reasonable cause” standard of La.Code Crim.P. art. 213 as the equivalent of probable cause. State v. Fisher, 97-1133 (La.9/9/98); 720 So.2d 1179.
Applying the Thompson factors to the present case, this court finds that Detective Primeaux had probable cause to arrest the defendant prior to the defendant’s interview. “Generally, probable cause for a warrantless arrest exists when facts and circumstances known to an arresting officer, and of which he has reasonably trustworthy information, are sufficient to justify a man of ordinary caution in believing that the person to be arrested has committed a crime.” State v. Hoffman, 98-3118 (La.4/11/00); 768 So.2d 542, 556, opinion amended on other grounds, 00-1609 (La.6/14/00); 768 So.2d 592, cert. denied, 531 U.S. 946, 121 S.Ct. 345, 148 L.Ed.2d 277 (2000). After his interview with the victims, Mr. Ceasar filed a report with the Sheriffs |inOffice. Detective Pri-meaux became involved in the investigation and watched the tape-recorded interviews of the victims. Although Mr. Ceasar *1213 did not specifically recite what he told the detective at the Sheriffs Office, we assume he made the detective aware of the allegations and that these allegations were also revealed on the victims’ tape-recorded interviews. Detective Primeaux testified that he was sitting in on the interview as a law enforcement officer based on Mr. Cea-sar’s report and the video-taped statements of the two girls. It is clear that Detective Primeaux knew of the specific allegations before he went to Mr. Ceasar’s interview. As a result, we find that probable cause existed to arrest the defendant at the time of his interview with Mr. Cea-sar.
As for the second Thompson factor, the investigation was certainly focused on the defendant at the time of the interview. The record does not reflect that the victims named anyone other than the defendant as their abuser.
The court also considers Mr. Ceasar’s intent as the interviewer as well as Detective Primeaux’s. Although Mr. Ceasar stated that the defendant came to the interview voluntarily and without coercion, the record reflects Mr. Ceasar intended the interview with the defendant to be more than just investigatory. Considering the accusatory language used by Mr. Cea-sar at the interview (i.e., calling the defendant a pervert), Mr. Ceasar’s filing of a police report before the interview, as well as Mr. Ceasar’s invitation to Detective Pri-meaux to be present during the interview, Mr. Ceasar intended the interview to be accusatory rather than merely investigatory. As soon as the defendant’s interview was complete, Detective Primeaux arrested the defendant. Considering these facts, both Mr. Ceasar and Detective Primeaux intended the interview of the defendant to be accusatory rather than merely investigative.
InThe final factor to be considered is the defendant’s objective belief as to whether or not he was being detained. Although the defendant attended the interview voluntarily and without coercion, the accusatory nature of the interview with the presence of law enforcement would have made a reasonable person believe he was being detained. The fact that the defendant asked Detective Primeaux if he was going to jail may indicate a subjective belief on the part of the defendant that he was not yet under arrest. In State v. Menne, 380 So.2d 14(La.), cert. denied, 449 U.S. 833, 101 S.Ct. 104, 66 L.Ed.2d 39 (1980), the supreme court stated the following regarding the defendant’s subjective belief that he was being detained:
Viewing the evidence objectively, from the standpoint of a reasonable interro-gee, we conclude that Menne was deprived of his freedom of action in a significant way at least from the time the two officers informed him, following an hour’s interrogation, that he was the last person with the murder weapon before the victim’s death and that they believed he knew more about the crime than he had revealed. By this time Menne, who knew that all other previous owners of the gun had been eliminated as suspects, would have been rash indeed to suppose that he was free to leave the second floor interrogation room if he pleased. Indeed, so far as the record discloses, Menne was never informed that he was not under arrest. A request to appear at a police station may easily carry an implication of obligation, while the appearance itself, unless clearly stated to be voluntary, may be an awesome experience for the ordinary citizen. See ALI, a Model Code of Pre-Arraignment Procedures, s 110.1(6) Commentary; see also s 120.5. The circumstances in this case dictate a finding that even without any physical restraint *1214 or express declaration that he was under arrest. Menne necessarily and reasonably must have understood that he was under compulsion to remain and submit to questioning. Cf. State v. Sherer, 354 So.2d 1038 (La.1978); see Seals v. United States, 117 U.S.App.D.C. 79, 325 F.2d 1006 (D.C.Cir.1963); People v. White, 69 Cal.2d 751, 72 Cal.Rptr. 873, 446 P.2d 993 (1968).
Id. at 17. Based on the above, the court in Menne held:
We conclude that Menne clearly was detained or had his freedom deprived in a significant way at least from the |T time the officers questioned his credibility and indicated he was a primary suspect. Under these circumstances, the warnings were required and the prosecution should not have been permitted to use the statements obtained from defendant without procedural safeguards effective to secure his privilege against self-incrimination.
Id. at 19.
We find that the facts of Menne are analogous. Mr. Ceasar was acting as an agent of law enforcement. Although he did not ask questions, Detective Primeaux was present during the interview and took notes. The defendant was aware that Detective Primeaux was a law enforcement officer and was obviously aware of his authority to arrest the defendant. There is no evidence that the defendant was told at anytime that he was not under arrest and was free to leave. The interview of the defendant took one to two hours, during which Mr. Ceasar used accusatory language toward the defendant. The defendant was also told he was lying and had better start telling the truth. Furthermore, the very nature of the interview would have caused a reasonable person to believe they were the only suspect and the investigation was focused on them. Thus, we find the entire interview was a detention, and the defendant should have been Mirandized, prior to making these statements. Defendant’s statements in the first confession should be suppressed.

Suppression of the Second Confession

The defendant claims the trial court erred in failing to find that his videotaped statement was tainted by the illegality of the first confession and should, therefore, be suppressed. We disagree.
The trial court stated the invocation of Miranda rights prior to the second confession “pretermitted” any possible illegality with the first confession. When the first interview was complete, Detective Pri-meaux advised the defendant of his h ¡¡Miranda rights. According to Detective Primeaux, the defendant appeared to understand his rights and did not appear to be under the influence of alcohol or narcotics nor did he appear to have any mental disease or defect. After the defendant indicated that he understood his rights, the detective advised him that he was under arrest.
When the defendant agreed to give a videotaped statement at the Sheriffs Office, Detective Primeaux handcuffed the defendant and took him to the Detective Division of the Sheriffs Office. The defendant was placed in the interview room and shown a written Miranda rights form. As captured on the video, Detective Primeaux read each of the rights on the form and asked the defendant if he understood each right. The defendant indicated that he understood his rights by placing his initials next to each right. The defendant then voluntarily signed the form indicating that he understood his rights. The defendant also signed the waiver portion of the form.
The defendant appeared remorseful in the videotape, but did not appear coerced in any way. Detective Primeaux and an *1215 other officer asked the defendant questions and the defendant answered freely. The videotape interview began at 6:45 p.m. Although at times, Detective Primeaux prompted the defendant’s videotaped statement by referring back to statements made in the first interview, for the most part the videotaped statement was a narrative of events given by the defendant.
In Oregon v. Elstad, 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985), the Supreme Court addressed the issue of whether “an initial failure of law enforcement officers to administer the warnings required by Miranda ..., without more, ‘taints’ subsequent admissions made after a suspect has been fully advised of and has waived his Miranda rights.” Elstad, 105 S.Ct. at 1288. Finding that Elstad’s second 1 uconfession should not be suppressed, the Court concluded “that a suspect who has once responded to unwarned yet un-coercive questioning is not thereby disabled from waiving his rights and confessing after he has been given the requisite Miranda warnings.” Id. at 1298.
Further, we must examine whether the defendant’s initial statement was coerced to the point of being involuntary. This will determine whether any “taint” from the initial unwarned statement was not cured by the second “warned” statement. The Supreme Court in Elstad stated:
[A]bsent deliberately coercive or improper tactics in obtaining the initial statement, the mere fact that a suspect has made an unwarned admission does not warrant a presumption of compulsion. A subsequent administration of Miranda warnings to a suspect who has given a voluntary but unwarned statement ordinarily should suffice to remove the conditions that precluded admission of the earlier statement.
Id. at 1296. The majority opinion noted in a footnote that most of the cases cited by Justice Brennan in his dissenting opinion concerned “an inital unwarned statement obtained through overtly or inherently coercive methods which raise serious Fifth Amendment and due process concerns.” Id. at 1295, n. 3.
There is no evidence in the present case of “deliberately coercive” or “improper tactics.” Although Mr. Ceasar called the defendant a “pervert” and Ms. Gwen Thompson, Mr. Ceasar’s supervisor, admonished the defendant to tell the truth, this type of behavior does not constitute coercion. As stated earlier, these factors helped produce an atmosphere of detention so as to invoke the defendant’s Miranda rights, but they did not coerce the defendant into confessing. In State v. Robertson, 97-0177 (La.3/4/98); 712 So.2d 8, cert. denied, 525 U.S. 882, 119 S.Ct. 190, 142 L.Ed.2d 155, rehearing denied, 525 U.S. 1035, 119 S.Ct. 583, 142 L.Ed.2d 487 (1998), “a confession is not rendered inadmissible by the fact law enforcement officers exhort or adjure an accused to tell |1Rthe truth provided the exhortation is not accompanied by an inducement in the nature of a threat or one which implies a promise of a reward.” Id. at 31. The record does not indicate the present defendant was induced in any way, other than by admonitions to tell the truth, into confessing. Furthermore, other than a failure to advise of Miranda rights, the first statement was voluntary.
Having concluded that the defendant’s initial statement to police was not coerced beyond the failure to render Miranda warnings and was otherwise voluntary, the only “taint” of the first statement was the failure to advise of Miranda rights. This “taint” was cured by Detective Primeaux’s advice of Miranda rights before the second confession. The second confession was also voluntary. The defendant was not coerced nor induced into confessing. *1216 Since the initial statement was uncoerced and voluntary although unwarned, the second statement was not rendered involuntary by Detective Primeaux’s referral to the initial statement when prompting the defendant to give information at the second statement. The second statement was given at a different location and had an additional officer present. The second statement was also given approximately thirty minutes after the first confession. Mr. Ceasar testified that the first interview began around 4:30 and lasted for one to two hours. Detective Primeaux testified that he advised the defendant of his Miranda rights after the initial confession at 6:10. According to the videotaped statement, the second confession began at 6:45. Not only did time pass between the two interviews, but the location and setting also changed. Thus, the atmosphere and surroundings of the first statement did not carry over into the second statement.
This finding is consistent with Louisiana jurisprudence. In State v. Cage, 97-1837 (La.11/14/97); 703 So.2d 1280, the supreme court addressed the issue |1(;of whether a second statement was rendered invalid based on the failure to give Miranda warnings at a preceding statement. The court stated:
Even assuming that the detective’s initial questions ranged beyond an internal prison disciplinary proceeding to the investigation of a criminal offense, that the defendant was therefore “in custody” for Miranda purposes, see Mathis v. United States, 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968), that the absence of Miranda warnings tainted his initial responses, and that his initial statements were of an equal inculpatory cast as his subsequent confession, the defendant’s voluntary statements made after he received his Miranda warnings remain admissible at trial. See Oregon v. Elstad, 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985).
Id. See also In the Interest of F.M., 97-1851 (La.12/19/97); 706 So.2d 441 and State v. Young, 344 So.2d 983 (La.1977).
We find that the defendant’s videotaped statement given to Detective Primeaux after he was advised of his Miranda rights is admissible, and the trial court was correct in denying the defendant’s motion to suppress that statement.
IV.

CONCLUSION

For the foregoing reasons, the ruling of the trial court is reversed insofar as it suppresses defendant’s statements in the first confession because defendant’s Miranda rights were violated. The trial court ruling is affirmed with regard to the defendant’s second confession, which is admissible.
WRIT DENIED IN PART, WRIT GRANTED IN PART AND REMANDED.
WOODARD, J., concurs.