917 So.2d 623 (2005)
STATE of Louisiana
v.
Shawn LAGARDE.
No. 05-KA-268.
Court of Appeal of Louisiana, Fifth Circuit.
November 29, 2005.
*625 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Anne Wallis, Donald Rowan, Jr., Assistant District Attorneys, Twenty-Fourth Judicial District, Parish of Jefferson, Gretna, Louisiana, for Plaintiff/Appellee.
Margaret S. Sollars, Louisiana Appellate Project, Thibodaux, Louisiana, for Defendant/Appellant.
Panel composed of Judges THOMAS F. DALEY, MARION F. EDWARDS, and WALTER J. ROTHSCHILD.
THOMAS F. DALEY, Judge.
Defendant, Shawn Lagarde, appeals his conviction of possession of cocaine in violation of LSA-R.S. 40:967(C). Lagarde pleaded guilty to the charge under State v. Crosby, 338 So.2d 584 (1976) after the trial court denied his Motion to Suppress Evidence. On appeal, Lagarde argues that the trial court erred in denying his Motion to Suppress because he was unrepresented by an attorney at the time the statement was made. After consideration, we affirm defendant's conviction.
Lagarde was charged in a Bill of Information with possession of cocaine in violation of LSA-R.S. 40:967(C), a charge to which he pled not guilty. Lagarde filed pre-trial motions, including a Motion to Suppress Confession, Identification, and Physical Evidence. He also filed a Motion to Quash the Bill of Information on the basis that the State had failed to timely commence trial. On December 15, 2004, the day the matter was set for trial, the judge denied the Motion to Quash. Jurors were then selected, and a hearing was held on the Motion to Suppress outside of the presence of the jury. Thereafter, Lagarde withdrew his not guilty plea and pled guilty as charged under LSA-C.Cr.P. art. 893 and State v. Crosby, 338 So.2d 584 (1976).[1] The defendant was sentenced to one year of imprisonment at hard labor. The trial judge suspended the imposition of the sentence, and placed defendant on active probation for one year. The trial judge also ordered Lagarde to pay a $300.00 fine and costs. This timely appeal follows.

FACTS[2]
According to the Probable Cause Affidavit, a search warrant was executed on August 27, 1998 at 918 Dimarco Street where Lagarde resided. The officers located approximately.2 grams of crack cocaine. The Probable Cause Affidavit further states that Lagarde testified on March 30, 2001 in Division E of the 24th Judicial District Court that the crack cocaine belonged to him.
The transcript of Lagarde's testimony at the March 30, 2001 hearing, which the State submitted at the hearing on the Motion to Suppress in this case, reflects that Lagarde testified as a witness for the prosecution in the matter of State of Louisiana versus Terell Gibson, Docket Nos. 99-2956, *626 99-2957, 99-4977, 99-4978, in Division E of the 24th Judicial District Court. After Lagarde was sworn, the prosecutor asked if he knew who owned the crack cocaine found pursuant to a search warrant executed at 913 Dimarco Drive, Apartment D in Marrero. Lagarde replied affirmatively. Thereafter, the prosecutor advised Lagarde that he was under oath and had the right to an attorney. The prosecutor also stated that if Lagarde said something that "incriminates yourself, you don't have to do that." The prosecutor asked if Lagarde understood, and Lagarde replied affirmatively. After the prosecutor asked about the ownership of the cocaine again, defendant replied that the cocaine belonged to him, and not to Terell Gibson.
Lagarde also said that the firearm seized pursuant to the warrant did not belong to Terell Gibson. Further, Lagarde testified that he claimed ownership of the "stuff" when the search warrant was executed, but that the agent executing the warrant did not listen. On cross-examination, Gibson's attorney asked Lagarde if he slept in the room where the drugs were found. Lagarde responded that he slept in that room on the previous night.
Immediately after Lagarde stepped down from the witness stand, the prosecutor nolle prosequied the aforementioned cases against Gibson. Thereafter, the transcript reflects that court was adjourned. The Probable Cause Affidavit reflects Lagarde was arrested at 11:55 a.m. that day. On May 2, 2001, the State filed a Bill of Information charging Lagarde with possessing cocaine on August 27, 1998 in Jefferson Parish.

ASSIGNMENT OF ERROR NUMBER ONE
Lagarde claims that the trial judge should have suppressed his prior testimony at the Gibson hearing in which Lagarde admitted ownership of the cocaine. Specifically, Lagarde contends that the testimony was in violation of his right to counsel and against self-incrimination. Lagarde also contends that Miranda warnings should have been administered before he inculpated himself.[3] The State responds that the trial court properly denied the Motion to Suppress because (1) defendant had no right to counsel; (2) defendant voluntarily incriminated himself despite being advised of the privilege against self-incrimination; and (3) Miranda warnings were not required since Lagarde was not subject to a custodial interrogation.
The first issue is whether Lagarde had a right to counsel when he testified in the Gibson matter. The Sixth Amendment to the United States Constitution provides that "in all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense." La. Const. art. I, § 13 provides in part:
... When any person has been arrested or detained in connection with the investigation or commission of any offense, he shall be advised fully of the reason for his arrest or detention, his right to remain silent, his right against self incrimination, his right to the assistance of counsel and, if indigent, his right to court appointed counsel. In a criminal prosecution, an accused shall be informed of the nature and cause of the accusation against him. At each stage of the proceedings, every person is entitled to assistance of counsel of his choice, or appointed by the court if he is indigent and charged with an offense punishable by imprisonment.
In McNeil v. Wisconsin, 501 U.S. 171, 111 S.Ct. 2204, 115 L.Ed.2d 158 *627 (1991), the United States Supreme Court stated that the Sixth Amendment right to counsel does not attach until a prosecution is commenced, which is, "`at or after the initiation of adversary judicial criminal proceedings-whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'"[4]See also, Davis v. United States, 512 U.S. 452, 456-457, 114 S.Ct. 2350, 2354, 129 L.Ed.2d 362 (1994), "The Sixth Amendment right to counsel attaches only at the initiation of adversary criminal proceedings ... and before such proceedings are initiated a suspect in a criminal investigation has no constitutional right to the assistance of counsel."
Under Louisiana law, a defendant's right to counsel guaranteed by the State Constitution attaches no later than the defendant's initial appearance or first judicial hearing.[5] However, the Louisiana Supreme Court has recognized that the right to counsel under Article I, § 13 and the right to counsel under the Sixth Amendment are coextensive in scope, operation, and application as to when the right to counsel attaches, at what subsequent stages it exists and whether it can be waived. State v. Tart, citing Carter, supra.
In Tart, the Louisiana Supreme Court found that a defendant's right to counsel under the Sixth Amendment and Article I, § 13 had not attached when the defendant was not arrested at the time of his confessions for two separate crimes. As such, the Tart court concluded that the defendant's right to counsel under the federal and state constitutions could not have been violated. Id. at 130-131. See also, State v. Duplessis, 00-971 (La.App. 5 Cir. 12/13/00), 777 So.2d 529, 531, "The right to counsel attaches only after the commencement of adverse judicial criminal proceedings."
In the instant case, Lagarde was not even arrested until after he had testified in the Gibson matter. Accordingly, there was no violation of the right to counsel under the federal or Louisiana constitutions. See, State v. Tart, supra.
The next issues are whether Lagarde's testimony was compelled in violation of his Fifth Amendment right against self-incrimination and whether Miranda warnings were required prior to his testimony.
Both the United States Constitution and the Louisiana Constitution provide a privilege against self-incrimination.[6] The privilege against self-incrimination can be claimed in any type of proceeding, whether it is civil, criminal, administrative, judicial, investigatory or adjudicatory.[7] Further, the privilege protects any disclosures that the witness may reasonably apprehend could be used in a criminal prosecution or that could lead to other *628 evidence that might be so used.[8] The privilege against self-incrimination must be liberally construed in favor of the accused or witness.[9]
However, the Fifth Amendment does not automatically preclude self-incrimination, whether spontaneous or in response to questions put by government officials.[10] In the absence of officially coerced self-incrimination, the Fifth Amendment privilege is not violated by even the most damning admissions.[11] As explained by the Supreme Court, a witness can lose the privilege by failing to assert it:
... a witness confronted with questions that the government should reasonably expect to elicit incriminating evidence ordinarily must assert the privilege rather than answer if he desires not to incriminate himself ... But if he chooses to answer, his choice is considered to be voluntary since he was free to claim the privilege and would suffer no penalty as the result of his decision to do so.[12]
An exception to the above rule is provided by Miranda, which excludes incriminating statements obtained during custodial interrogation unless the suspect fails to claim the Fifth Amendment privilege after being properly warned of the right to remain silent and of the consequences of the failure to assert the right.[13] But, Miranda warnings are applicable only when it is established that the defendant has been subject to a "`custodial interrogation.'"[14] Custodial interrogation is defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."[15] The term "in custody" relates primarily to situations in which there is a "`formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.'"[16] In addition, merely because an investigation focuses on a suspect does not trigger the need for Miranda warnings in a non-custodial setting.[17]
In State v. Redwine, 311 So.2d 855 (La. 1975), the Louisiana Supreme Court held that there was no error in the admission of the defendant's self-inculpatory testimony given at a prior trial where he testified as a witness for his friends who were charged with possession of opium. At the prior *629 trial, Redwine testified on behalf of the defense that he hid the opium in his friends' apartment without their knowledge. After the friends were convicted, the State filed charges against Redwine, with the principal evidence used to convict him being the testimony he had given in the prior trial. Id. at 856 and fn. 1.
The Louisiana Supreme Court found that the State proved that the defendant's testimony was not compelled or made under the influence of coercion or inducements because he freely and voluntarily took the stand to help his friends. The Redwine court noted that the trial court had appointed an attorney for him who advised him of his constitutional right not to testify and warned of the consequences if he did so. Id. at 856.
In addition, the Supreme Court rejected Redwine's contention that he should have been provided Miranda warnings before testifying as follows:
Pretermitting whether the present record ... does not in fact show substantial compliance with its warning-requirements, Miranda by its terms was intended to regulate and control the abuses of pre-trial custodial interrogation; it was not intended to apply to questioning in open court under supervision of a judge during the trial of a contested case, where traditional court-protected trial rights of the parties and the witnesses are designed to avoid the abuses possible in private custodial interrogation.
Id. at 857.
As in Redwine, Lagarde's right against self-incrimination was not violated. It is noted that Redwine is different because he had an appointed attorney before he testified as a defense witness, while Lagarde was unrepresented and testified as a prosecution witness. However, these differences are not dispositive of the issue of whether Lagarde's testimony was compelled. First, Lagarde was not constitutionally entitled to an attorney, since the right to counsel had not yet attached. Further, the Supreme Court has recognized that as a general rule, even a witness who is under compulsion to testify has not been "compelled" to incriminate himself within the meaning of the Fifth Amendment when the witness makes disclosures instead of claiming the privilege against self-incrimination.[18]
In the instant case, the transcript of the Gibson proceeding reflects that Lagarde was told that he had the right to an attorney and that he had the right not to say anything that would incriminate him. After indicating his understanding of these rights, Lagarde nevertheless made incriminating disclosures instead of claiming the privilege against self-incrimination. Since Lagarde revealed incriminating information instead of timely asserting his Fifth Amendment privilege (of which he was obviously aware), his disclosures were not compelled.[19]
As to Lagarde's claim that he was entitled to Miranda warnings, the record evidences no formal arrest or a restraint on Lagarde's freedom of movement of the degree associated with a formal arrest. As such, Lagarde was not subject to a custodial interrogation and Miranda warnings were not required before Lagarde testified in the Gibson proceeding.
*630 The trial judge's determination as to the admissibility of a statement is entitled to great weight and will not be overturned unless it is not supported by the evidence.[20] Considering the foregoing, the trial judge did not err in denying the Motion to Suppress.

ERRORS PATENT DISCUSSION
The record was reviewed for errors patent.[21] There is a discrepancy between the commitment and the transcript because the commitment reflects that the sentence was suspended, whereas the transcript reflects that the imposition of the sentence was suspended. In addition, the commitment also reflects that the $300.00 fine was a special condition of probation, while the transcript does not.
Generally, when there is a discrepancy between the minutes and the transcript, the transcript prevails.[22] Accordingly, we remand the matter to allow the trial judge to make the commitment consistent with the transcript in the foregoing respects.
Accordingly, defendant's conviction is affirmed, and the matter remanded as noted above.
CONVICTION AFFIRMED; AND REMANDED.
NOTES
[1] It is noted that defendant did not specify which pre-plea ruling he intended to reserve for appeal at the time he entered his Crosby plea. However, defendant's timely written Motion for Appeal specifically listed, as the basis for his appeal, the trial court's rulings on both motions. Defendant has only challenged the Motion to Suppress on appeal. Accordingly, it appears defendant's Assignment of Error challenging the trial court's ruling on his Motion to Suppress is properly before the Court. See, State v. Jackson, 04-758 (La.App. 5 Cir. 11/30/04), 889 So.2d 1071, fn. 3. See also, State v. Joseph, 03-315 (La.5/16/03), 847 So.2d 1196.
[2] Since defendant entered a guilty plea, the following facts are taken from the Arrest Report and Probable Cause Affidavit, the Bill of Information, the Motion to Suppress hearing, and the evidence introduced therein.
[3] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[4] Quoting United States v. Gouveia, 467 U.S. 180, 188, 104 S.Ct. 2292, 2297, 81 L.Ed.2d 146 (1984), which quoted Kirby v. Illinois, 406 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1972) (plurality opinion).
[5] State v. Tart, 93-772 (La.2/9/96), 672 So.2d 116, 131, cert. denied, 519 U.S. 934, 117 S.Ct. 310, 136 L.Ed.2d 227 (1996), citing State v. Hattaway, 621 So.2d 796 (La.1993), overruled on other grounds in State v. Carter, 94-2859 (La.11/27/95); 664 So.2d 367.
[6] U.S. Const., Amend. V; La. Const. Art. 1 Sec. 16.
[7] Parish of Jefferson v. Lafreniere Park Foundation, 98-345 (La.App. 5 Cir. 9/15/98), 720 So.2d 359, 365, writ denied, 98-2598 (La.10/28/98), 723 So.2d 965, citations omitted.
[8] Id.
[9] State v. Gerard, 96-366 (La.App. 5 Cir. 11/14/96), 685 So.2d 253, 257-258.
[10] United States v. Washington, 431 U.S. 181, 186, 97 S.Ct. 1814, 1818, 52 L.Ed.2d 238 (1977).
[11] Id.
[12] Minnesota v. Murphy, 465 U.S. 420, 429, 104 S.Ct. 1136, 1143, 79 L.Ed.2d 409 (1984). (Emphasis Added).
[13] Minnesota v. Murphy, 465 U.S. at 430, 104 S.Ct. at 1143, citing Miranda.
[14] State v. Maise, 00-1158 (La.1/15/02), 805 So.2d 1141, 1148-1149, citations omitted.
[15] Maise at 1149, citations omitted
[16] Maise, citing Minnesota v. Murphy, 465 U.S. at 433, 104 S.Ct. at 1145. In Minnesota v. Murphy, the Supreme Court stated, "We have consistently held ... that this [Miranda's] extraordinary safeguard `does not apply outside the context of the inherently coercive custodial interrogations for which it was designed.'" Minnesota v. Murphy, 465 U.S. at 430, 104 S.Ct. at 1143-1144, internal citations omitted. The Supreme Court held in this case that an incriminating statement given by Murphy, who was on probation at the time, to his probation officer without Miranda warnings was admissible against him in a subsequent criminal proceeding.
[17] Minnesota v. Murphy, 465 U.S. at 431, 104 S.Ct. at 1144.
[18] Minnesota v. Murphy, 465 U.S. at 427, 104 S.Ct. at 1142, citations omitted.
[19] Thirty years ago, the Supreme Court noted that, "At this point in our history virtually every schoolboy is familiar with the concept, if not the language, of the [Fifth Amendment]." Michigan v. Tucker, 417 U.S. 433, 439, 94 S.Ct. 2357, 2361, 41 L.Ed.2d 182 (1974).
[20] State v. Taylor, 99-1154 (La.App. 5 Cir. 2/29/00), 757 So.2d 63, 67, writ denied, 00-1021 (La.3/30/01), 788 So.2d 441.
[21] LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990).
[22] State v. Lynch, 441 So.2d 732, 734 (La. 1983).