STATE OF LOUISIANA          *         NO. 2025-K-0440

VERSUS                   *

                              COURT OF APPEAL

DARRION A. BROWN      *

                              FOURTH CIRCUIT

                   *

                              STATE OF LOUISIANA

* * * * * * *

APPLICATION FOR WRITS DIRECTED TO
CRIMINAL DISTRICT COURT ORLEANS PARISH
NO. 561-927, SECTION "J"
Honorable Calvin Johnson, Judge
* * * * * *
**Judge Dale N. Atkins**
* * * * * *

(Court composed of Judge Daniel L. Dysart, Judge Sandra Cabrina Jenkins, Judge Dale N. Atkins)


Jason R. Williams, District Attorney
Brad Scott, Chief of Appeals
Danny Tran, Assistant District Attorney
Patricia Amos, Assistant District Attorney
PARISH OF ORLEANS
619 S. White Street
New Orleans, LA 70119

      COUNSEL FOR RELATOR, the State of Louisiana

Matthew Kellner
ORLEANS PUBLIC DEFENDERS
2601 Tulane Avenue, Suite 700
New Orleans, LA 70119

      COUNSEL FOR RESPONDENT, Darrion A. Brown


              **WRIT GRANTED; JUDGMENT REVERSED**
                   **SEPTEMBER 10, 2025**

This is a criminal case. Relator, the State of Louisiana ("State"), seeks review of the district court's May 21, 2025 ruling, which granted the "Motion for Suppression of Statements" ("Motion to Suppress") filed by Respondent, Darrion Brown ("Mr. Brown"). For the following reasons, we grant the State's writ application and reverse the district court's ruling.

## STATEMENT OF THE CASE

On May 13, 2024, the State charged Mr. Brown via bill of information with one count of aggravated burglary in violation of La. R.S. 14:60; one count of possession of a firearm by a convicted felon in violation of La. R.S. 14:95.1; one count of domestic abuse battery against Teana Clayton ("Ms. Clayton") in the presence of a minor child in violation of La. R.S. 14:35.3(I);[1] and one count of domestic abuse battery against Ms. Clayton in violation of La. R.S. 14:35.3. On May 29, 2024, Mr. Brown filed his Motion to Suppress[2] wherein he sought "[s]uppression . . . of all involuntary statements obtained in violation of [his] Fifth

---

[1] Louisiana Revised Statutes 14:35.3(I) applies when "a minor child thirteen years of age or younger was present at the residence or any other scene at the time of the commission of the offense" of domestic abuse battery.

[2] Mr. Brown filed his Motion to Suppress as part of an "Omnibus Motion for Discovery; Motion to Preserve Evidence; Motion for Suppression of Statements, Evidence and Identifications; and Motion for a Preliminary Examination."

Amendment rights as well as his rights under Article 1, Sections 13 and 16 of the Louisiana Constitution and La. R.S. 15:451." In terms of the United States Constitution, Mr. Brown also requested suppression pursuant to the Due Process Clause, the Sixth Amendment right to counsel, and the Fourth Amendment, as well as "all other applicable constitutional and statutory provisions." Mr. Brown further requested suppression "pursuant to [*Miranda v. Arizona*], 384 U.S. 436[, 86 S.Ct. 1602] (1966) and its progeny under both the state and federal constitutions." When Mr. Brown subsequently appeared for arraignment on June 18, 2024, he pled not guilty to the charges. Thereafter, on May 21, 2025, the district court held a hearing on Mr. Brown's Motion to Suppress.

## STATEMENT OF FACTS

### May 21, 2025 Hearing on Motion to Suppress

Officer Ashlyn Falls ("Officer Falls") testified as the sole witness at the hearing on Mr. Brown's Motion to Suppress. Officer Falls testified that on October 27, 2023, she responded to a call concerning Mr. Brown's alleged unauthorized entry into the residence of his child's mother, Ms. Clayton. Officer Falls testified that she first spoke with Ms. Clayton, who told her that Mr. Brown entered the residence uninvited, armed with a gun, and demanding to see Ms. Clayton. Officer Falls stated that, according to Ms. Clayton, Mr. Brown left several voicemail messages for Ms. Clayton prior to his arrival at the residence, including one wherein he allegedly stated: "If you play with me one more time I'm gonna beat the f--- out of you."

In speaking with Ms. Clayton's grandmother and aunt, who were present when she arrived, Officer Falls ascertained that both the grandmother and the aunt saw Mr. Brown enter the residence armed with a gun and told him to leave because

3

there were children present. Officer Falls stated that the witnesses explained to her that Mr. Brown did not have to force entry because the residence was unlocked at the time he entered. Officer Falls also testified that Ms. Clayton and Mr. Brown's daughter reported that Mr. Brown tried to push her down when he entered, that she almost fell as a result, and that Mr. Brown was armed with a gun at the time.

Officer Falls then testified that after speaking with Ms. Clayton and family members at the residence, she obtained Mr. Brown's cellphone number, intending to call him to get his side of the story. According to Officer Falls, Mr. Brown answered her phone call and told her that he went to Ms. Clayton's residence for his daughter's birthday. Officer Falls explained that Mr. Brown was not in custody at the time of the phone call because they were not communicating in person and Mr. Brown was free to terminate the call at any time. Additionally, Officer Falls explained that she did not prepare or obtain an arrest warrant until after speaking to Mr. Brown over the phone. Finally, Officer Falls testified that, during a photographic lineup, Ms. Clayton and witnesses identified Mr. Brown as the individual who entered Ms. Clayton's residence with a gun.

On cross-examination, Officer Falls clarified that Mr. Brown and Ms. Clayton shared a daughter, whose birthday was October 27, the date of the incident. Officer Falls testified that prior to their daughter's birthday, Mr. Brown and Ms. Clayton had been coordinating with one another to prepare for their daughter's birthday party. Officer Falls stated that Ms. Clayton had asked Mr. Brown to bring food for the party. According to Officer Falls, she found no damage or signs of forced entry at the residence because the door to the residence was unlocked and Mr. Brown was able to simply walk in. Officer Falls also testified that none of the victims or witnesses reported or appeared to have any

4

injuries. To this end, Officer Falls stated that Ms. Clayton did not report having any physical contact with Mr. Brown during the incident. Officer Falls further added that Ms. Clayton's aunt reported that the gun was not in Mr. Brown's hands, but rather was in his waistband.

Regarding her phone conversation with Mr. Brown, Officer Falls further testified on cross-examination that prior to calling Mr. Brown, she discussed possible charges to file against him with her supervisor, including aggravated burglary. Officer falls further testified that Mr. Brown was cooperative when they spoke over the phone. When asked if "[a]t the end of the call, the person on the other end of the line asked if he had anything to worry about," Officer Falls stated that she did not remember. Officer Falls explained that she did not record the phone call, so the only recording of the phone call that existed was her own body-worn camera footage recording of her side of the conversation. Officer Falls also testified that she never located a gun in the course of her investigation.

On redirect-examination, Officer Falls testified that Ms. Clayton's grandmother and aunt told Mr. Brown to leave the residence after he entered and then physically pushed him out the door to make him leave. Officer Falls again testified that her phone conversation with Mr. Brown occurred prior to preparing or obtaining the warrant for his arrest. Further, Officer Falls explained that during the phone call, she identified herself as a police officer and told Mr. Brown that she was calling him about his involvement in the incident at Ms. Clayton's house. Officer Falls also admitted that she did not advise Mr. Brown of his *Miranda* rights at any time during the phone conversation.

5

**<u>Ruling</u>[3]**

At the conclusion of the hearing, the district court orally granted Mr. Brown's Motion to Suppress, stating:

> Calling the defendant on . . . his cell phone giving the defendant the impression that there is, as I take it he said at the end of the call, "Am I in any kind of trouble?" Well, he was in trouble at the beginning of the call. He was obviously in trouble at the beginning of the call and the officer knew he was in trouble at the beginning of the call, which is why I asked the question about recording the conversation. . . . It should have been sufficient to also know that you needed to inform this person [of his rights], as you would inform this person when you actually showed up and arrested him.

The State's timely writ application to this Court followed.

## ASSIGNMENT OF ERROR

In its writ application to this Court, the State asserts one assignment of error, contending "[t]he [district] court abused its discretion in granting [Mr. Brown]'s motion to suppress [his] statement- there is no just reason to suggest *Miranda* warnings would ever be required under these circumstances." Before resolving the issue raised by the State's writ application, we begin with the standard of review applicable to motions to suppress.

## STANDARD OF REVIEW

As recently explained by this Court, a district court is afforded great discretion when ruling on a motion to suppress, and an appellate court will not disturb the district court's ruling on a motion to suppress absent an abuse of that discretion. *State v. Hill*, 2025-0316, p. 10 (La. App. 4 Cir. 8/19/25), ___ So.3d ___, ___, 2025 WL 2398906, at *4 (citing *State v. Debose*, 2024-0217, p. 6 (La. App. 4

---

[3] The district court found no probable cause for the domestic battery charges in violation of La. R.S. 14:35.3 and La. R.S. 14:35.3(I) nor for the felon in possession of a firearm charge in violation of La. R.S. 14:95.1. The State did not seek review of the district court's probable cause findings, so those rulings are not before this Court.

Cir. 6/13/24), 390 So.3d 971, 977). In reviewing a motion to suppress, "[a]n appellate court affords 'great weight' to the district court's ruling," recognizing that the district "court ha[d] the opportunity to observe the witnesses and weigh the credibility of their testimony." *Id.* (second alteration in original) (quoting *Debose*, 2024-0217, p. 6, 390 So.3d at 977). As this Court also explained in *Hill*, "a motion to suppress presents a mixed question of law and fact." *Id.* at pp. 10-11, ___ So.3d at ___, 2025 WL 2398906, at *4 (quoting *Debose*, 2024-0217, p. 7, 390 So.3d at 977). Accordingly, "the appellate court reviews the underlying facts for an abuse of discretion but reviews conclusions to be drawn from those facts *de novo*." *Id.* (internal quotation marks omitted). If there are no facts in dispute, "the appellate court need only consider whether the district court came to the proper legal determination under the undisputed facts." *Id.* (internal quotation marks omitted). In the matter *sub judice*, there are no underlying facts in dispute. Accordingly, we will conduct a *de novo* review of the district court's ruling.

## DISCUSSION

The State contends that the district court erred in granting Mr. Brown's Motion to Suppress because Mr. Brown was not in the presence of law enforcement; he was not subject to a custodial interrogation; and he had not been charged with any crime at the time he spoke with Officer Falls over the phone. In opposition, Mr. Brown argues that his statements should be suppressed for lack of a *Miranda* warning, violation of his due process rights, and violation of the Sixth Amendment right to counsel. Our *de novo* review of the record shows the State's arguments have merit.

Pertaining to motions to suppress statements, La. C.Cr.P. art. 703 provides, in pertinent part:

7

B. A defendant may move on any constitutional ground to suppress a confession or statement of any nature made by the defendant.

. . . .

D. On the trial of a motion to suppress filed under the provisions of this Article, the burden of proof is on the defendant to prove the ground of his motion, except that the state shall have the burden of proving the admissibility of a purported confession or statement by the defendant . . . .

*See also Hill*, 2025-0316, p. 11, ___ So.3d at ___, 2025 WL 2398906, at *5 (citing *State v. Willis*, 2022-0452, p. 8 (La. App. 4 Cir. 9/1/22), 348 So.3d 167, 173). Additionally, La. R.S. 15:451 states that "[b]efore what purports to be a confession can be introduced in evidence, it must be affirmatively shown that it was free and voluntary, and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises." Thus, at the hearing on Mr. Brown's Motion to Suppress, the State bore the burden of proving the admissibility of his statements. We must therefore determine whether the State satisfied its burden. Thus, we turn to the laws on custodial interrogations and *Miranda* warnings.

Regarding "the free and voluntary nature of confessions and statements, both the Louisiana and United States Constitutions provide 'procedural safeguards effective to secure the privilege against self-incrimination.'" *Hill*, 2025-0316, p. 12, ___ So.3d at ___, 2025 WL 2398906, at *5 (quoting *Willis*, 2022-0452, p. 8, 348 So.3d at 173). *See also Miranda*, 384 U.S. at 444, 86 S.Ct. at 1612. In particular, the Fifth Amendment to the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself . . . ." The United States Supreme Court held in *Miranda* "that the Fifth Amendment privilege is available outside of criminal court proceedings and serves to protect

persons in all settings in which their freedom of action is curtailed in any significant way from being compelled to incriminate themselves." 384 U.S. at 467, 86 S.Ct. at 1624. The United States Supreme Court further held in *Miranda* that "[p]rior to any questioning, [a person who has been taken into custody or otherwise deprived of his freedom of action in any significant way] must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." 384 U.S. at 444, 86 S.Ct. at 1612.

Similarly, the Louisiana Constitution provides that "[w]hen any person has been arrested or detained in connection with the investigation or commission of any offense, he shall be advised fully of the reason for his arrest or detention, his right to remain silent, his right against self incrimination, his right to the assistance of counsel and, if indigent, his right to court appointed counsel." La. Const. art. I, § 13 (1974). These rights are reiterated in La. C.Cr.P. art. 218.1 which states that "any person [who] has been arrested or detained in connection with the investigation or commission of any offense . . . shall be advised fully of the reason for his arrest or detention, his right to remain silent, his right against self incrimination, his right to the assistance of counsel and, if indigent, his right to court appointed counsel."

The Louisiana Supreme Court has established three factors which must be present so as to require the advisement of *Miranda* rights: "(1) the defendant is in 'custody' or significantly deprived of freedom, (2) there is an 'interrogation,' and (3) the interrogation is conducted by a 'law enforcement officer' or someone acting as their agent." *State v. Bernard*, 2009-1178, p. 5 (La. 3/16/10), 31 So.3d 1025, 1029. Thus, the first factor establishes that "*Miranda* warnings are applicable only

9

when it is established that the defendant has been subject to a custodial interrogation." *State v. Lagarde*, 2005-268, p. 7 (La. App. 5 Cir. 11/29/05), 917 So.2d 623, 628 (citing *State v. Maise*, 2000-1158, p. 10 (La. 1/15/02), 805 So.2d 1141, 1148-49). As recently defined by this Court, a "custodial interrogation" is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Hill*, 2025-0316, p. 13, ___ So.3d at ___, 2025 WL 2398906, at *6 (quoting *Willis*, 2022-0452, 348 So.3d at 173-74). Thus, just "because an investigation focuses on a suspect" this "does not trigger the need for *Miranda* warnings in a non-custodial setting." *Lagarde*, 2005-268, p. 8, 917 So.2d at 628, 629 (citing *Minnesota v. Murphy*, 465 U.S. 420, 431, 104 S.Ct. 1136, 1144). For example, in *Maise*, the Louisiana Supreme Court held that the defendant was not subject to a custodial interrogation when he made an inculpatory statement to his probation officer, and thus, was not entitled to *Miranda* warnings prior to making said statement, because the defendant was not under arrest, was speaking to the officer on the telephone, was free to terminate call, and was not given inducement to make statement. 2000-1158, pp. 9-10, 805 So.2d at 1148-49. We find the matter *sub judice*, is analogous to *Maise*. When Mr. Brown provided his statement to Officer Falls, he was not entitled to *Miranda* warnings because he was not under arrest; he spoke to Officer Falls on the telephone; he was free to terminate the call; and there is no evidence he was given an inducement to make his statement.

Next, we consider whether Officer Falls' phone conversation with Mr. Brown violated his right to counsel. The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence [sic]." As stated

10

previously, La. Const. art. I, § 13 also establishes that a "person [who] has been arrested or detained in connection with the investigation or commission of any offense," must "be advised fully of . . . his right to the assistance of counsel and, if indigent, his right to court appointed counsel." The Louisiana Supreme Court has noted that "[t]he right to counsel under Louisiana Constitution Article I, Section 13 and the right to counsel under the Sixth Amendment are coextensive in scope, operation, and application." *State v. Brown*, 2018-01999, p. 19 (La. 9/30/21), 330 So.3d 199, 222 (first citing *State v. Carter*, 1994-2859, p. 20 (La. 11/27/95), 664 So.2d 367, 382; then citing *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); and then citing *State v. Brooks*, 452 So.2d 149, 155 (La. 1984)).

The right to counsel "does not attach until a prosecution is commenced." *State v. Walker*, 51,217, p. (La. App. 2 Cir. 5/17/17), 221 So.3d 951, 965 (first citing *McNeil v. Wisconsin*, 501 U.S. 171, 111 S.Ct. 2204 (1991); and then citing *Texas v. Cobb*, 532 U.S. 162, 121 S.Ct. 1335 (2001)). Stated differently, the right to counsel, "attaches only after the commencement of adverse judicial criminal proceedings." 1994-2859, p. 5 (La. 11/27/95), 664 So.2d 367, 372. The "initiation of adversary judicial criminal proceedings" may be "by way of formal charge, preliminary hearing, indictment, information, or arraignment." *State v. Jefferson*, 2018-0083, p. (La. App. 1 Cir. 9/24/18), 261 So.3d 793, 799 (citing *Carter*, 1994-2859, p. 5, 666 So.2d at 372). In applying the foregoing principles in *State v. Graffia*, the Louisiana Fifth Circuit Court of Appeal held that even though the defendant was already under arrest and participated in a lineup, "the adversary judicial criminal proceedings against the [d]efendant that would have secured his right to an attorney . . . had not commenced when the lineup was conducted"

11

because "no formal charge, preliminary hearing, indictment, bill of information, or arraignment had been held, filed, and/or returned." 2006-756, pp. 9-10 (La. App. 5 Cir. 1/30/07), 951 So.2d 1186, 1191. *See also State v. Cheathon*, 28,741, p. 6 (La. App. 2 Cir. 10/30/96), 682 So.2d 823, 827 (holding the defendant's right to counsel had not been violated when officers conducted a photo lineup without his attorney present because the lineup occurred years before the filing of the bill of information). In *Kirby v. Illinois*, the United States Supreme Court explained the rationale behind why the right to counsel does not attach until a prosecution has commenced:

> The initiation of judicial criminal proceedings is far from a mere formalism. It is the starting point of our whole system of adversary criminal justice. For it is only then that the government has committed itself to prosecute, and only then that the adverse positions of government and defendant have solidified. It is then that a defendant finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law. It is this point, therefore, that marks the commencement of the 'criminal prosecution' to which alone the explicit guarantees of the Sixth Amendment are applicable.

406 U.S. 682, 689-690, 92 S.Ct. 1877, 1882 (1972) (first citing *Powell v. Alabama*, 287 U.S. 45, 66-71, 53 S.Ct. 55, 63 (1932); then citing *Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199 (1964); and then citing *Spano v. New York*, 360 U.S. 315, 324, 79 S.Ct. 1202, 1207 (1959) (Douglas, J., concurring)).

Turning to the matter *sub judice*, the State had not commenced a prosecution against Mr. Brown at the time of his phone call with Officer Falls because there had been no formal charge, preliminary hearing, indictment, bill of information, or arraignment. The mere fact that Officer Falls and her supervisor discussed the possible charges that could arise after the investigation of the incident prior to the phone call did not begin the formal prosecutorial process necessary to elicit Mr.

Brown's right to counsel. We note Mr. Brown was not even under arrest when he made the subject statement to Officer Falls, though *Graffia* establishes that Mr. Brown's right to counsel still would not have attached if that had been the case. Further, while officers conducted a photographic lineup with Ms. Clayton and witnesses, this too did not violate Mr. Brown's constitutional right to counsel in the absence of the commencement of adverse judicial proceedings. *Graffia*, 2006-756, pp. 9-, 951 So.2d at 1191; *Cheathon*, 28,741, p. 6, 682 So.2d at 827. Therefore, the trial court erred in suppressing Mr. Brown's statement.

## DECREE

For the foregoing reasons, we grant the State's writ application and reverse the district court's May 21, 2025 ruling, which granted Mr. Brown's Motion to Suppress.

**WRIT GRANTED; JUDGMENT REVERSED**